**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| CATHARINA COSTA and DONALD SOMMER,<br><br>Plaintiffs,<br><br>v.<br><br>GLOBAL EXPERIENCE SPECIALISTS, INC., *et. al*,<br><br>Defendants. | Case No. 2:14-cv-00153-RFB-PAL<br><br>**ORDER** |

### I.  INTRODUCTION

Before the Court are Defendant's Motion for Summary Judgment, Plaintiffs' Motion for Partial Summary Judgment, and Plaintiffs' Motion to Strike. ECF Nos. 42, 43, 51. For the following reasons the Court denies Plaintiffs' Motions in full and grants in part and denies in part Defendant's Motion.

### II.  BACKGROUND

Plaintiffs filed their Complaint on January 28, 2014. ECF No. 1. Defendants filed a Motion for Summary Judgment on November 13, 2015. ECF No. 42. Plaintiffs filed a Motion for Summary Judgment on November 13, 2015. ECF No. 43. Plaintiffs filed a Motion to Strike Defendant's Motion for Summary Judgment on December 28, 2015. ECF No. 51. The Court held a hearing on July 27, 2016 to hear oral argument on these motions.

### III. MOTION TO STRIKE

#### A. Legal Standard

The court can only consider admissible evidence in ruling on a motion for summary judgment. Orr v. Bank of Am., NT & SA, 285 F.3d 764, 773-74 (9th Cir. 2002); Fed.R.Civ.P. 56(e). Unauthenticated documents cannot be considered in a motion for summary judgment. See Cristobal v. Siegel, 26 F.3d 1488, 1494 (9th Cir.1994)

In a summary judgment motion, documents authenticated through personal knowledge must be "attached to an affidavit that meets the requirements of [Fed.R.Civ.P.] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." Canada v. Blain's Helicopters, Inc., 831 F.2d 920, 925 (9th Cir.1987). However, a proper foundation need not be established through personal knowledge but can rest on any manner permitted by Federal Rule of Evidence 901(b) or 902.

Fed. R. Civ. P. 26(a)(1) governs initial disclosures in discovery and requires that a party must provide, among other things, "(i) the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment" and "(ii) a copy--or a description by category and location--of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." The rule further provides that parties must supplement disclosures and responses. See Fed. R. Civ. P. 26(e) (providing that a party "must supplement or correct its disclosure or response: in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.").

"Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001); See Fed. R. Civ. P. 37(c)(1)

(providing that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial.").

### B. Discussion

Plaintiffs argue that the Court should strike Defendant's Exhibit "C-1" and "D" because these exhibits are inadmissible hearsay and cannot be authenticated.

### 1. Exhibit C: The CBN List

Defendant's Ex C-1 is the 69 person Call by Name ("CBN") List, a summary of the information from the Teamster Skill-Set List Update 10-15, which was discussed in various depositions. Mr. Boyd, the Regional Director of Operations, West Region for Defendant Global Experience Specialists, Inc. ("GES") testified that GES employee Mr. Turner created the list and that he and Mr. Thompson used it to call employees for install and dismantle ("I&D") conventions. However, both Mr. Turner and Mr. Thompson clarified that Mr. Turner did not create the 69 person CBN List.

Based on these facts, Plaintiff argues that since the Teamster Skill-Set List Update 10-15 ("the CBN list") cannot be authenticated, Exhibit C-1, is hearsay that cannot be authenticated and should be excluded because it is a summary of that information. Defendant argues that just because Turner and Thompson did not create the CBN list does not mean he cannot authenticate the list under FRE 901(b)(1). Boyd is the Regional Director of Operations, West Region for GES and is therefore able to authenticate the CBN list based on his personal knowledge of how conventions are staffed when Teamster labor is needed. In reply, Plaintiffs argue that Mr. Boyd did not have personal knowledge of what Mr. Turner and Mr. Thompson relied on to make their labor calls.

Defendant also argues that the CBN list is not hearsay because it was not attached to show how many hours Plaintiffs worked in relation to other employees or for the truth of the whether Plaintiffs were worked as often as other members of the Core 11 Group. Rather, the CBN list discloses the identity of the persons who were in the 69-person core group. In reply, Plaintiffs argue that Defendants are offering the CBN List to assert that they made labor calls based on the classifications within the list.

The Court finds that Defendant has not shown how Boyd could authenticate the CBN list based solely on his knowledge of how conventions are staffed and therefore cannot authenticate the list. Further, the Court finds that the list contains additional information aside from simply who was part of the core group; the list contains the worker's classification as well as their grouping; there is even an indication that certain employees—GES Regular Employees—be given first opportunity for work. See Ex. C-1.

However, Defendant argues that the content of the list—the names of the 69 persons—is admissible at trial, and Boyd or another witness could testify regarding those names. The Plaintiffs do not address this argument in their reply. The Court agrees with Defendant. See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) ("we need not decide whether the diary itself is admissible. It would be sufficient if the contents of the diary are admissible at trial, even if the diary itself may be inadmissible. At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents."). Therefore while the Court will not admit the CBN List into evidence, the Court will consider the names of the 69 persons on the CBN List.

## 2. Exhibit D: Ms. Hook's Payroll Declaration

Regarding Defendant's Exhibit D, the affidavit of Ms. Hook, GES's Payroll Supervisor, Plaintiffs argue that the Court should strike this evidence as Ms. Hook was not disclosed as a lay witness, expert witness, or rebuttal expert witness. Plaintiff argues that Hook is not qualified to provide rebuttal expert testimony, but appears to be performing such analysis on unidentified information that was not disclosed during discovery. Plaintiffs also argue that Ms. Hook's testimony is inadmissible hearsay, and that the unknown and unidentified evidence that Ms. Hook references was not disclosed during discovery and cannot be authenticated.

Defendant argues that Hook is GES's Payroll Supervisor and a custodian of its payroll and time records. In this capacity, Hook is privy to, and capable of ascertaining the content of, these records. Defendants concede that Hook was not disclosed as a witness by name. However, in its Initial Disclosures served on March 12, 2014, Defendants reserved the right to "use ... any witnesses disclosed by Plaintiffs." See, D.'s Ex. 6 to Ex. C 2:15-16. In their Initial Disclosures,

1  Plaintiffs included the "Person Most Knowledgeable of GES regarding payroll records within the
2  last seven (7) years." See, D.'s Ex. 7 to Ex. C 2:16-17. Therefore, Defendant argues, it has been
3  contemplated from the outset that there would be a witness in this case to potentially testify
4  regarding GES's payroll records and their content. Defendant does not respond to Plaintiffs'
5  argument that the declaration is inadmissible hearsay but implicitly argues that her statements are
6  not hearsay as they are based on personal knowledge.

7  In reply, Plaintiffs argue that the declaration contains more information beyond statements
8  related to payroll that include comparisons and analysis of various people's payrolls in relation to
9  one another and in relation to previous years of work.  Plaintiffs argue this is problematic because
10 Hook did not identify any records that were produced in discovery that she relied on for her
11 analyses, comparisons, and/or conclusions. Ms. Hook did not attach the records she relied on to
12 her affidavit. Therefore, Plaintiffs argue, the analysis, comparisons, and conclusions in Ms. Hook's
13 affidavit cannot be made solely on Ms. Hook's personal knowledge.

14 The Court finds that Hooks was not a previously disclosed witness. She should have been
15 disclosed as a witness pursuant to Rule 26 if Defendants wanted to rely upon her.  This is especially
16 this case where, as here, the basis for her statements cannot be clearly discerned from produced
17 material.  Exhibit D is stricken pursuant to Rule 37.  The Court will allow Defendant to file a
18 motion in limine prior to trial to assert why the information contained in Exhibit D may be
19 considered at trial.

20 Therefore, as explained above, the Court GRANTS in part and DENIES in part Plaintiffs'
21 Motion to Strike. ECF No. 51. The Court now turns to the parties' Motions for Summary Judgment.

22

23 **IV.    MOTION FOR SUMMARY JUDGMENT**
24     **A. Legal Standard**
25 Summary judgment is appropriate when the pleadings, depositions, answers to
26 interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no
27 genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."
28 Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering

the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

### B. Undisputed/Disputed Facts

#### 1. Undisputed Facts

The following facts are undisputed by the parties: Plaintiffs Catharina Costa and Donald Sommer have been romantic partners for close to 20 years. In 2005, Plaintiffs began working for Expo Services as lead man and/or working foreman. At the time, Expo was a division of Viad. Viad is the parent company of GES and was never Plaintiffs' employer. In 2010, Expo merged with GES.

Prior to the operational merger, Plaintiffs regarded themselves as part of a core group of 11 employees (the "Core 11") that would work for Expo on a regular basis. The "Core 11" contained three (3) female working foreman and eight (8) male working foreman.

Expo primarily engages in work on custom booths for tradeshows commonly referred to as install and dismantle or "I&D," whereas GES does more general contractor-type work.

Plaintiffs work for GES pursuant to the terms of its collective bargaining agreement (the "CBA") with Teamsters Local 631. Plaintiffs were not guaranteed any specific amount of work by GES. GES's need for Teamster labor varies from show-to-show and during a show, and the volume of shows varies annually. As a show ends, Teamsters such as Plaintiffs may be assigned to work on a different show for GES or Expo, or they might be laid off until their services are needed again. Once laid off, Plaintiffs could work for competitors until the next GES work opportunity arose, or longer, if they desired.

In March 2010, Costa was sent to a job at MGM with 18 male working foreman. She was the only female working foreman from the Core 11 group, but not the only female working

1    foreman. She was the only female working foreman from the Core 11 group to be laid off.
2    However, some males were also laid off, and other (non-Core 11) females continued to work.
3    　　　　On or about March 17, 2010 and March 21, 2010, Costa submitted letters to the National
4    I&D Manager for GES, which contained internal complaints regarding the fact that she was being
5    discriminated against based on her gender with respect to the terms and conditions of her
6    employment regarding work selection and assignments.
7    　　　　On March 30, 2010, Ms. Bandi, the Director of Human Resources, investigated Costa's
8    complaint and the next day submitted her findings that there was no discrimination, as the foremen
9    were dispatched based on job requirements and client needs with no regard to relationship or
10   gender.
11   　　　　On July 8, 2010 Costa had a meeting with Julie Smith, Director of Human Resources for
12   GES, to discuss why Costa felt she was not working as much as she thought she should. From June
13   13, 2010 to December 31, 2010, Costa only worked 10 days. Sommer did not work from June 13,
14   2010 to November 28, 2010. Smith stated she was surprised to learn Plaintiffs did not work during
15   this period and that everybody should have been working based on the amount of work GES had
16   at the time.
17   　　　　On January 11, 2012, Costa filed a charge of discrimination based on her sex, her age, and
18   retaliation with the Nevada Equal Rights Commission (NERC) and the Equal Employment
19   Opportunity Commission (EEOC). On March 1, 2012, Sommer filed a charge of discrimination
20   based on third party retaliation and age with NERC and the EEOC.
21   　　　　Since March 2013, GES stopped dispatching Plaintiffs out for work and had their names
22   removed from the call by name list. Plaintiffs could only be sent to GES for work in response to
23   GES' open calls to Local 613.
24   　　　　On or about July 22, 2013, Sommer was transferred to the warehouse and has worked
25   consistently since then.
26   　　　　In January 2014, GES asked for warehouse employees to volunteer to work the Expo
27   Services show floor. Sommer volunteered, but was told that he was blacklisted and could not work
28   for Expo Services anymore.

## 2. Disputed Facts

The parties dispute whether in 2010, after the GES and Expo Services divisions were merged, Defendants continued to use the Expo Services Core 11 group of employees, which Plaintiffs were part of, for labor calls to assemble and dismantle custom booths on a regular basis. The parties dispute whether Labor calls were made for the Core 11 group based on past history, not show size and/or volume of shows. The parties dispute whether the hourly wage of all Core 11 group members was reduced to be consistent with the CBA and what the GES Teamsters were paid. The parties dispute whether Core 11 members were demoted and why. The parties dispute whether Plaintiffs' hours decreased after the merger.

The parties dispute whether the 69-person Expo Services Teamster Labor List (the CBN list) and the A, B, and C classifications within it are pretext for discriminating against employees.

Regarding the March 20, 2010 incident, the parties dispute whether some of the males on the 17 person crew at MGM who were assigned jobs at venues around town had only worked for Expo Services for a few days or a few weeks. Regarding the investigation of the March 2010 incident, the parties dispute whether GES checked to see if there were safeguards in place to ensure that males and females received the same amount of work.

Regarding the February 2013 incident at the World of Concrete ("WOC") convention, the parties dispute whether Plaintiffs made negative statements to Mr. Belcher's client, Matt Holmes, a Senior International Account Executive, at the Topcon/Sokkia booth at the WOC on February 1, 2013. The parties dispute whether the Plaintiffs were disciplined or removed from the CBN list as a result of this incident.

V. **DISCUSSION**

A. **Defendant's Motion for Summary Judgment**

1. **Defendant Viad is Entitled to Summary Judgment**

Absent special circumstances, parent companies are generally not liable for alleged employment discrimination by their wholly owned subsidiaries. Watson v. Gulf & Western

1 Industries, 650 F.2d 990, 993 (9th Cir. 1981). Plaintiffs do not respond to this argument in their Opposition and conceded to Defendant Viad's dismissal at oral argument on June 28, 2016.

The Court finds that, as in Watson, "[t]here is no indication that the parent-subsidiary relationship is a 'sham' or that circumstances exist that would render the parent liable for debts of its subsidiary." Watson v. Gulf & W. Indus., 650 F.2d 990, 993 (9th Cir. 1981).

Therefore, the Court grants Defendants' Motion and dismisses all claims against Defendant Viad.

### 2. Plaintiffs Allege A Continuing Violation or Pattern of Discrimination

"[A] Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period…set forth in 42 U.S.C. § 2000e–5(e)(1)." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002). Pursuant to 42 U.S.C. § 2000e-5(e)(3)(B), liability may be imposed on an employer for Title VII discrimination and a plaintiff may recover back pay for a period of up to two years before the filing of a charge of discrimination.

Interpreting Morgan, the Ninth Circuit notes that "the Supreme Court substantially limited the notion of continuing violations: 'discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.' In specifically rejecting the application of the continuing violations doctrine to what the Employees now characterize as a 'serial violation,' the Court explained that '[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act.' In contrast to discrete acts, the Court carved out an exception for claims based on a hostile work environment." Cherosky v. Henderson, 330 F.3d 1243, 1246 (9th Cir. 2003).

However, Morgan did not expressly invalidate the application of the continuing violations doctrine for policies or practices of discrimination. In Lyons v. England, the Ninth Circuit stated, regarding the case which Morgan reversed in part, "[w]e did not consider whether the employer had engaged in a systematic policy or practice of discrimination, and, as a consequence, the Supreme Court's decision did not directly overrule our construction of the latter theory. However, it did not specifically endorse that theory either." 307 F.3d 1092, 1106 (9th Cir. 2002).

Plaintiffs Costa and Sommer filed their Charges of Discrimination on January 11, 2012 and March 1, 2012. Defendant argues that under Morgan, a plaintiff cannot recover for discrete acts of discrimination occurring more than 300 days before the filing of a charge of discrimination and therefore Costa and Sommer should not be able to recover for discrete acts of discrimination occurring before March 17, 2011 and May 6, 2011, respectively.

In their reply brief, Plaintiffs argue that under the current version of 42 U.S.C. § 2000e–5(e)(3), effective since 2009 and the relevant time period here, the proper period is two years, rather than 300 days. Therefore, Plaintiffs argue that all their claims, starting from March 2010, would be covered. Further, Plaintiffs argue the alleged conduct is not comprised of discrete acts of discrimination, but rather takes place in the context of a pattern of discrimination, which is not invalidated by Morgan. See Lyons, 307 F.3d at 1106. Therefore, Plaintiffs argue they should be entitled to pursue claims for acts beginning in March 2010, when the pattern or practice of discrimination began.

At oral argument in July 2016, Defendant argues that 42 U.S.C. § 2000e–5(e)(3) based on the Ledbetter Act amendments to Title VII are concerned with discrimination claims in the context of compensation, which is not the case here. Plaintiffs did not respond to this argument, and instead focused their argument regarding the statute of limitations on the applicability of the continuing violation doctrine.

The Court does not construe Plaintiffs to be alleging discrimination based on individual, discrete acts of discrimination. Rather, the Court finds that the continuing violation doctrine applies, as Plaintiffs allege that Defendant engaged in a pattern or practice of discriminating against Costa on the basis of her sex, and Sommer on the basis of his relationship with Costa. Therefore, Plaintiffs shall be permitted to proceed based on their claims beginning in March 2010, which is when Plaintiffs allege the discriminatory behavior began.

/ / /

/ / /

/ / /

### 3. Costa's Sex Discrimination Claim

#### a. Only Costa's Sex Discrimination Claim Under a Theory of Disparate Treatment Shall Proceed

"Title VII prohibits both intentional discrimination (known as 'disparate treatment') as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as 'disparate impact')." Ricci v. DeStefano, 557 U.S. 557, 577 (2009). In the Ninth Circuit, "[w]e have yet to decide whether both theories of liability—disparate impact and disparate treatment—must be alleged in the complaint in order to provide the basis for later trial or summary judgment." Coleman v. Quaker Oats Co., 232 F.3d 1271, 1291 (9th Cir. 2000). However, in that case, the Ninth Circuit precluded plaintiff from asserting disparate impact theory, adopting the reasoning of the Third Circuit: "In Josey, the Third Circuit held that where a plaintiff sets forth only the disparate treatment theory in his pleadings and does not move to amend his complaint until summary judgment following the close of discovery, the plaintiff is barred from proceeding on the disparate impact theory. The court reasoned that adding a new theory of liability at the summary judgment stage would prejudice the defendant who faces different burdens and defenses under this second theory of liability. The court held that the plaintiff should have moved to amend his pleadings during discovery. We agree." Coleman v. Quaker Oats Co., 232 F.3d 1271, 1292 (9th Cir. 2000) (internal citations omitted).

The Court finds that Costa has stated a disparate treatment claim, not a disparate impact claim, as she did not plead a disparate impact claim in her Complaint nor did she move to amend her Complaint during discovery to clarify she was also pursuing a disparate impact claim. In fact, even in Costa's complaint with the EEOC, she does not indicate that the Defendant engaged in discriminatory policies towards women generally. Pl.'s Ex. 14.

"[A] plaintiff establishes a prima facie [disparate impact] case if the defendant's facially neutral practice causes a disproportionate adverse impact on a protected class." Darensburg v. Metro. Transp. Comm'n, 636 F.3d 511, 519 (9th Cir. 2011). However, nowhere in their briefs, nor at the June 2016 hearing, did Plaintiffs articulate or identify a facially neutral policy or practice

that had the result of disparately impacting women over men; for example, Plaintiffs do not allege that Defendants have a policy of practice of dispatching individuals of a certain height, which would have the impact of dispatching more men than women. Rather, the Plaintiffs stated that the Defendant's practice was to discriminate against female workers by failing to dispatch them at the same rate as their male counterparts. This states a discrimination claim under disparate treatment theory, not disparate impact theory.

Therefore the Court permits only Costa's Title VII sex discrimination claim under a theory of disparate treatment to proceed.

### b. *Legal Standard: Disparate Treatment*

"[D]isparate treatment and retaliation claims are subject to the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The analysis has three steps. The employee must first establish a prima facie case of discrimination. If he does, the employer must articulate a legitimate, nondiscriminatory reason for the challenged action. Finally, if the employer satisfies this burden, the employee must show that the reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. Summary judgment is not appropriate if a reasonable jury viewing the summary judgment record could find by a preponderance of the evidence that the plaintiff is entitled to a verdict in his favor. A plaintiff alleging employment discrimination need produce very little evidence in order to overcome an employer's motion for summary judgment. This is because the ultimate question is one that can only be resolved through a searching inquiry-one that is most appropriately conducted by a factfinder, upon a full record. In evaluating motions for summary judgment in the context of employment discrimination, we have emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses." Davis v. Team Elec. Co., 520 F.3d 1080, 1088–89 (9th Cir. 2008) (internal citations and quotations omitted).

A plaintiff "must establish a prima facie case of disparate treatment discrimination by showing that (1) she belongs to a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably. The requisite degree of proof necessary to establish a prima facie case for Title VII ... claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." Id. at 1089 (internal citations and quotations omitted). When the reliance is on circumstantial evidence, there must be specific and substantial evidence of pretext to survive a summary judgment motion. Coghlan v. American Seafoods Company, LLC, 413 F.3d 1090, 1095 (9th Cir. 2005).

Defendant does not dispute that Costa belongs to a protected class or that she is qualified for her position—although Defendant argues that she was classified as a lesser qualified worker based on the inadmissible portion of their CBN List. Instead, the crux of their argument is 1) Costa cannot establish a prima facie case for sex discrimination because she did not suffer adverse employment action given; and 2) if Costa has established a prima facie case for discrimination, the reasons for adverse action were legitimate and not discriminatory.

While the Defendant divides Costa's claim into separate time periods and offers nondiscriminatory reasons for each alleged adverse employment action, the Court finds that Costa has sufficiently established a continuing violation and therefore will not address events in a piecemeal, discrete fashion. While the Court outlines Defendant's arguments in the manner presented to the Court in its briefs, the Court finds that material facts preclude granting summary judgment in Defendant's favor.

With regards to the March 2010 incident in which Costa claims she was the only Core 11 female on the job and was laid off because of her sex, Defendant argues that Costa was not laid off because of her gender, as other females continued to work after Costa was laid off and other males were laid off. Additionally, Defendant argues that the investigation and report completed by Ms. Bandi concluding that the termination was not based on gender further establishes that her termination was not gender-motivated. Plaintiff argues that in reviewing her internal discrimination claim, Bandi improperly compared Core 11 and non-Core 11 members when

making her determination that there was no gender-based discrimination; and that Defendant improperly relied on their CBN List and Hook's affidavit in their Motion, such that material facts are in dispute precluding summary judgment.

Defendant disputes whether from 2010-2012 Costa has established a prima facie case for discrimination as she did not work fewer hours than her male counterparts. See D.'s Ex. D. Plaintiff has produced an expert report analyzing the employment data from December 2009 to April 2015 and determined that as a whole, Plaintiff worked fewer hours per week on average because of her gender, and that, based on calculations regarding female and male workers, female workers worked fewer hours. Caroll Report, Pl.'s Ex. 16. Defendant argues that Caroll's statistical analysis of the hours that women worked is flawed and therefore cannot establish a stark pattern of sex discrimination that would establish a prima facie case of discrimination for the purposes of summary judgment.

Last, Defendant argues that the even if Plaintiff is successful in establishing a prima facie case, Costa's reduction in hours—in particular after the World of Concrete (WOC) show in February 2013—is attributable to her conduct at WOC. However, the parties dispute what actually occurred at WOC and Plaintiff has established evidence through her prima facie case that the reason her hours were reduced was not due to her alleged actions, but her gender. Plaintiff argues that Lori Caudill caused the incident and was not disciplined.

"[T]he requisite degree of proof necessary to establish a prima facie case for Title VII ... claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008). Moreover, in this specific context, "whether two employees are similarly situated is ordinarily a question of fact." Hawn v. Executive Jet Mgmt., Inc., 615 F.3d 1151, 1157 (9th Cir. 2010) (internal citation omitted). Because the parties dispute the fourth element of the disparate treatment test, that "similarly situated individuals outside her protected class were treated more favorably", the Court denies summary judgment at this time. Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008).

Moreover, "[a] plaintiff may use statistics to show an intent to discriminate." Pottenger v. Potlatch Corporation, 329 F.3d 740, 747 (9th Cir. 2003) (citations omitted). "Consistent with our precedents, we conclude that a plaintiff who submits statistical evidence that shows a stark pattern of age discrimination establishes a prima facie case at step one of the McDonnell Douglas framework ... [However,] we do not hold that any statistical evidence of disparate treatment, regardless of its strength, will be sufficient to establish a prima facie case." Schechner v. KPIX-TV, 686 F.3d 1018, 1025 (9th Cir. 2012). All pertinent variables need to be considered when evaluating statistical evidence. Id., at 748; Coleman v. Quaker Oats Company, 232 F.3d 1271, 1283 (9th Cir. 2000). "[I]n many cases, statistical evidence will need to address variables other than [the protected characteristic at issue] in order to give rise to an inference of discrimination sufficient to make a plaintiff's prima facie case." Schechner, 686 F.3d at 1024.

Defendant argues that Carroll does not did not consider the hours worked by any employee, male or female, beyond the Core 11 Group even though the 69-person CBN List comprised the Teamsters who primarily worked on Expo jobs. Defendant further argues that Carroll's data was incomplete because he did not consider a third female who was a part of the Core 11 group. Defendant also argues that Carroll does not consider variables that might have affected the hours of Costa and Russell, namely the WOC incident in 2013. Despite the potential flaws in Carroll's analysis, however, the Court finds that Plaintiff has established a prima facie showing of discrimination and adverse employment action in light of Carroll's report. The Defendant has not cited, nor is the Court aware, of any authority that the specific flaws Defendant points to are fatal, in the summary judgement context, towards establishing a prima facie case with statistical evidence as offered by Carroll.

Therefore the Court denies Defendant's Motion as to Costa's disparate treatment claim, finding that Costa has established a prima facie case for sex discrimination, and that issues of material fact regarding various incidences and the overall, continuing violation pattern of discrimination exist, precluding judgment in Defendant's favor.

#### 4. Costa's Age Discrimination Claim

If Costa establishes a prima facie case of discrimination and GES articulates legitimate, non-discriminatory reasons for its actions, Costa must then establish that the articulated reason is merely a pretext for discrimination, with the ultimate burden of proof at all times remaining on her to show she was the victim of age discrimination. Coleman, 232 F.3d at 1280-81 (citations omitted). Costa is required to prove she would not have been discriminated against "but for" her age, i.e., that it was "the reason" for the discrimination. Gross v. FBL Financial Services, Inc., 129 S.Ct. 2343, 2350-51 (2009).

Relying on Hooks's report, Defendant argues that the data does not support any contention that Costa would have worked more hours "but for" her age. Plaintiff does not respond to this argument in her moving papers and at the June 2016 hearing concedes to the dismissal of this claim. The Court therefore GRANTS Defendant summary judgment regarding Costa's ADEA claim.

#### 5. Costa's Retaliation Claim

##### a. Legal Standard

To prevail on his retaliation claims, Plaintiff must demonstrate: (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that there is a causal link between the protected activity and the adverse employment action. Dawson v. Entek Intern, 630 F.3d 928, 936 (9th Cir. 2011). But-for causation is required to satisfy the third prong. "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Univ. of Texas Southwestern Med. Ctr. V. Nassar, 133 S.Ct. 2517, 2533 (2013). This requires a plaintiff "to show that her protected conduct was a but-for cause—but not necessarily the only cause—of her termination." Westendorf v. W. Coast Contractors of Nevada, Inc., 712 F.3d 417, 422 (9th Cir. 2013).

Protected activities under Title VII include opposing allegedly discriminatory acts by one's employer. Id.; 42 U.S.C. 2000e-3(a). Further, if an employee communicates to his employer a reasonable belief the employer has engaged in a form of employment discrimination, that

communication constitutes opposition to the activity. Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn., 555 U.S. 271, 276 (2009). If GES then articulates a legitimate, non-retaliatory reason for the action, then Costa must show the reason was a pretext for retaliation. Davis v. Team ElectNic Co., 520 F.3d 1080, 1094-95 (9th Cir. 2007). Costa must show specific and substantial evidence of pretext. Manatt v. Bank of America, 339 F.3d 792, 801 (9th Cir. 2003).

### b. Discussion

Defendant argues that Plaintiff cannot establish a prima facie case because: 1) she did not suffer adverse employment action; and 2) cannot show but-for causation. Defendant points to the same evidence regarding Costa's hours as it did regarding her sex discrimination claim. Defendant argues that Costa's hours increased in 2011. After she filed her Charge, her hours increased again in 2012. During these years, she also worked more hours than numerous other employees.

Plaintiff argues that she was assigned fewer hours following filing her internal complaint. Specifically, about three (3) months after Costa filed her internal complaints, Plaintiff argues that GES practically eliminated her hours between June 13, 2010 and December 31, 2010. During this seven-month period, Costa only worked ten (10) days from August 15, 2010 to August 25, 2010. Pl.'s Exs. 10, 11.

Last, Defendant argues that Costa has no evidence this action would not have occurred "but for" her engaging in a protected activity or specific and substantial evidence it was just a pretext for retaliation. However, a plaintiff is not required to show but-for causation definitely at the summary judgment stage and can defeat summary judgment by showing that there are issues of disputed fact. See Westendorf v. W. Coast Contractors of Nevada, Inc., 712 F.3d 417, 423 (9th Cir. 2013) ("the record evidence was sufficient to raise a material question of fact as to whether Ms. Westendorf's July 14 complaints—which we have already said could be 'protected activity'— were a but-for cause of her termination."). In this case, Costa has produced evidence suggesting that but for her internal complaint, she would not have been assigned fewer hours based on the temporal proximity of the reduction of her hours in relation to the complaint she filed. In the Ninth Circuit, "[t]emporal proximity between protected activity and an adverse employment action can by itself constitute sufficient circumstantial evidence of retaliation in some cases." Stegall v.

Citadel Broad. Co., 350 F.3d 1061, 1069 (9th Cir. 2003), as amended (Jan. 6, 2004) (internal citation and quotation omitted). Therefore, Defendant's Motion as to Plaintiff's retaliation claim is DENIED.

### 6. Sommer's Retaliation Claim

The Supreme Court in Thompson v. Noah American Stainless, LP, 131 S.Ct. 863 (2011), held that the fired fiancé of an employee who engaged in a protected activity could also assert a Title VII retaliation claim under Title VII. Defendant does not dispute that Sommer had a relationship similar to that in Thompson. Rather, Defendant argues that 1) Sommer did not experience adverse employment and 2) even if he could establish a prima facie case, Defendant has a nondiscriminatory explanation for its action.

Relying again on Hooks's statement, Defendant argues that Sommer alleges he was retaliated against after Costa complained about sex discrimination in 2010, his hours increased each year over the next two years until 2012. Further, in 2011 and 2012 Sommer worked more hours than half the employees on the CBN List. While his hours decreased in 2013 after being taken off the CBN List for Expo events, his hours were increased again in 2014. Last, Defendant argues that to the extent Sommer may attempt to rely on a statistical analysis from Dr. Carroll, it suffers from the same defect of not considering data beyond the Core 11 Group, and Dr. Carroll has no personal knowledge of what motivated any employment decisions regarding Sommer. See D.'s Ex. 14.

However, the Court finds that Sommer has provided evidence suggesting that he was assigned fewer hours after Costa submitted her complaint. About three months later, Sommer argues that his hours were eliminated from June 13, 2010 through November 28, 2010. Pl.'s Exs. 12, 13. From May 2010-July 2013, GES further assigned him fewer hours on average than other males. Id. Also, in March 2013, GES stopped dispatching Sommer out for work and removed his name from the call by name list. Pl.'s Ex. 2. In addition, Carroll's analysis and determination, which is based on Sommer's time sheets, finds that that he was discriminated against because of Costa's action by a reduction in work hours after her complaint establish a prima facie showing of

adverse employment action. Pl.'s Ex. 17. Therefore the Court finds that Sommer has established a prima facie case of third party retaliation.

Defendant argues that shortly after the operational merger, all the Core 11 Group members had their pay reduced to be consistent with the CBA and what their GES counterparts were being paid, and these members were no longer treated as Working Foremen on jobs unless they were actually performing these duties on the job in question. However, as with Costa's sex discrimination and retaliation claims, the Court finds that Sommer has established that this reason may be pretextual, and that the actual reason he suffered adverse action by his employer was his relationship with Costa.

Therefore the Court DENIES Defendant's motion as to Sommer's claim.

### B.  Plaintiffs' Motion for Summary Judgment

Plaintiffs filed a motion for partial summary judgment. First, Costa argues that she is entitled to summary judgment on her sex discrimination claim under a disparate impact theory, conceding that material facts remain in dispute as to her disparate treatment claim. However, because the Court finds that she is precluded from asserting this claim as it was not argued in her Complaint, the Court does not address this argument. Therefore the Court DENIES Plaintiff's motion regarding her sex discrimination claim.

Second, Costa argues that she is entitled to summary judgment as to her retaliation claim. However, as discussed previously, there are material issues in dispute as to whether her hours were reduced following her complaint and, whether but-for her complaint, her hours were reduced, as Defendant offers multiple explanations as to why her hours may have fluctuated based on business necessity, the changing needs of clients, and the events at the WOC conference.

Sommer argues that he is entitled to summary judgment as to his retaliation claim. However, the Court finds that there are material issues in dispute as to whether Sommer's hours were reduced following Costa's complaint and, whether but-for his complaint, his hours were reduced, as Defendant offers multiple explanations as to why his hours may have fluctuated based on business necessity, the changing needs of clients, and the events at the WOC conference.

Therefore the Court denies Plaintiffs' Motion in full.

## VI. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Strike is **GRANTED in part and DENIED in part**. ECF No. 51.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment is **DENIED**. ECF No. 43.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 42) is **GRANTED in part and DENIED in part** as follows:

- The Court dismisses Defendant Viad from the case.
- The Court permits Plaintiffs' claims from March 2010 to proceed pursuant to the continuing violation doctrine.
- The Court shall allow Plaintiff's sex discrimination claim to proceed under a theory of disparate treatment as alleged in her Complaint, and only as to an overall reduction of hours and not regarding the discrete March 2010 incident where she was laid off.
- The Court dismisses Plaintiff Costa's claim for age discrimination.
- The Court denies Defendant's Motion as to the remainder of its Motion.

**DATED:** September 23, 2016.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**